IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MITILE, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:13-cv-451 (GBL/TCB) |
| v. | ) | |
| | ) | |
| HASBRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on claim construction. (Docs. 36, 39, 43, 44.) This case concerns Defendant Hasbro Inc. ("Hasbro")'s alleged infringement of U.S. Patent Number 8,057,233 ("the '233 Patent") owned by Plaintiff MiTile, Ltd. ("MiTile"). The patent relates to a game system consisting of "manually manipulable device[s]" that "interact with a similar device or devices according to their relative locations so as to produce a sensory response for a user[.]" U.S. Patent No. 8,057,233 col. 1, ll. 6–9 (filed Nov. 15, 2011). The electronic tiles of the game display words, phrases, sentences, numbers, mathematical symbols, or musical symbols, "depending on the particular application or purpose of the device or devices," which can be arranged in different, winning patterns. *Id.* col. 1, ll. 32–47.

The Court concludes that there are three terms requiring claim construction because their constructions are necessary "to clarify and . . . explain what the patentee covered by the claims." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Court holds that (1) the term "changeable individual characterization" means "a representation associated with a particular device that is capable of being changed or altered during play"; (2) the term "proximity sensor" means "structure for detecting the relative closeness of other devices"; and

(3) the term "communications unit" means "structure that transmits and receives information wirelessly." Each of these terms is discussed in turn.

## I. BACKGROUND

The following is taken from Plaintiff's Complaint (Doc. 1). In 2004, Thomas Martin Owen ("Owen"), then–Director of Development at Futurelab, began developing the "Intelligent Apparatus" system. The Intelligent Apparatus system eventually became the prototype for the game system taught in the '233 Patent. On June 2, 2005, Owen filed Patent Application No. 11/142,955 ("the '955 Application") to cover the game system and on November 15, 2011, the '955 Application matured into the '233 Patent entitled "Manipulable Interactive Devices." MiTile owns all right, title, and interest in the '233 Patent.

On January 19, 2009, Yesim Kunter, a Concept Designer with Hasbro, contacted Owen and indicated that she would "love to show" the Intelligent Apparatus system to Hasbro's Futurist Team, a division within Hasbro with the stated mission of "inspir[ing] and bring[ing] new innovative ideas for Hasbro." (Doc. 1, ¶ 25.) Owen later made a presentation to Phil Sage, Director of Global Technology Acquisition at Hasbro, describing a "multi-sensory play and learning system." (*Id.* ¶ 31.) At various times between late 2009 and mid-2010, Owen and Hasbro were in communications regarding the game system and in the fall of 2010, Hasbro released Scrabble Flash, consisting of five interactive blocks, each presenting a variety of letters, images, and numbers. In 2011, Hasbro released Yahtzee Flash and Simon Flash, also consisting of interactive blocks presenting a variety of letters, images, and numbers.

There are six independent claims at issue, claims 1, 12, 18, and 20–22 of the '233 Patent, and seven dependent claims, claims 5–7, 14, 16–17, and 19. Claim 1, which illustrates the terms at issue, provides for:

2

> 1. A learning game method making use, in play, of a set of at least two manually manipulable interactive blocks each having a changeable individual characterization, each interactive block having:
>
> a processor arranged to control operation of the block;
> a power source providing power to the block;
> a visual display unit arranged to display visual display material, the visual display material presenting said changeable individual characterization of its respective interactive block in a form selected from the group consisting of: a letter, a group of letters; and a word;
> a response generator;
> a communications unit configured, in use, to effect communication with at least a second of said at least two blocks of the set; and
> a proximity sensor configured to sense proximity and determine relative position of at least said second of said at least two interactive blocks, . . . .

'233 Patent col. 1, ll. 49–66. On August 5, 2013, Plaintiff and Defendant filed their respective claim construction briefs (Docs. 36, 39) and on August 16, 2013, Plaintiff and Defendant filed their respective responses to each other's claim construction briefs (Docs. 43, 44). Plaintiff's and Defendant's proposed constructions are now before the Court.

## II. DISCUSSION

Claim construction is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370. 391 (1996). The court begins a claim construction analysis by considering the language of the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). A claim term's meaning cannot be narrowed or limited by particular embodiments described in a patent specification. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 907 (Fed. Cir. 2004); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

The words of the claim "are generally given their ordinary and customary meaning," which "is the meaning that term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13 (internal quotation marks omitted). In

addition, "claims must be read in view of the specification, of which they are a part." *Id.* at 1315 (internal quotation marks omitted). Lastly, courts may "rely on dictionary definitions when construing terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322–23 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)) (internal quotation marks omitted).

### III. ANALYSIS

The Court construes the following three terms found in the '233 Patent: (1) "changeable individual characterization"; (2) "proximity sensor"; and (3) "communications unit." The construction of these three terms is necessary "to clarify and . . . explain what the patentee covered by the claims[.]" *U.S. Surgical Corp.*, 103 F.3d at 1568. Each term will be discussed in turn.

#### A. "Changeable Individual Characterization"

The Court adopts Defendant's definition of "changeable individual characterization" as meaning "a representation associated with a particular device that is capable of being changed or altered during play." The Court adopts this construction because this construction incorporates the meaning of "changeable," "individual," and "characterization" as defined in the '233 Patent.

First, the Court understands "characterization" to be synonymous with "representation." The Random House Webster's College Dictionary defines "to characterize" as "to describe the character of" and "description" as "descriptive representation." *See* Random House Webster's College Dictionary (2d ed. 2001). Defendant's proposed language, "a representation," incorporates this plain meaning of "characterization." Second, the Court understands the adjective "individual" when modifying the noun "characterization" to refer to each block having its own characterization, or representation, consisting of words, numbers, or symbols. '233

Patent col. 1, ll. 23–47. This understanding accords with the claim language "manually manipulable interactive blocks *each* having a changeable individual characterization." *Id.* col. 8, ll. 50–51 (emphasis added). Defendant's proposed language, "associated with a particular device," incorporates this understanding of the word "individual." Third and lastly, the Court understands the adjective "changeable" when modifying the noun "characterization" to refer to the fact that a block's characterization is not fixed but rather can "change producing a new changeable individual characterization presented on the visual display unit[.]" *Id.* col. 9, ll. 32–34. Defendant's proposed language, "that is capable of being changed or altered during play," incorporates this understanding of the word "changeable."

The Court rejects Plaintiff's proposed construction "representation of a variable property presented by a particular device during a game." Plaintiff claims that the representation disclosed in the '233 Patent is the representation "of a variable property," because the patent "treats a property and its representation as two separate elements." (Doc. 44 at 5.) To illustrate, Plaintiff suggests that the letter "c" is a "property" but a lower-case "c," upper-case "c," and highlighted "c" are "representations" of that property. That is, they "chang[e] the manner in which the user perceives the *same* property," the letter "c." (*Id.*) The Court cannot adhere to Plaintiff's distinction between a property and its representation. The claims do not refer to, or use, the terms "property" and "representation" of a property. Claim 1, for example, states that a "changeable individual characterization" may take a "form selected from the group consisting of: a letter; a group of letters; and a word." '233 Patent col. 1, ll. 51, 58–59. Claim 1 discusses variations in what can be visually displayed on a block but does not refer to those variations as representations of a single property. Additionally, Plaintiff's proposed language "during a game" is vague. The claims do not define when a game begins and ends, but they do refer to the use of the blocks

while "in play." *See id.* col. 1, l. 49. This reference corresponds to Defendant's proposed language "during play."

For these reasons, the Court adopts Defendant's definition of "changeable individual characterization," construing the term to mean "a representation associated with a particular device that is capable of being changed or altered during play."

### B. "Proximity Sensor"

The Court adopts Defendant's construction of "proximity sensor" except for the proposed language "and identity." Excepting this language, the construction of "proximity sensor" adopted by the Court is "structure for detecting the relative closeness of other devices."

The plain meaning of "proximity" is "closeness." The claim language explains that the "proximity" sensed by the proximity sensor is the proximity between the interactive blocks. Claim 1, for example, refers to "locating the first and second blocks proximate to each other" and "locating the third block proximate to the first and second blocks." *Id.* col. 9, 9–10; *id.* col. 10, ll. 19–20. Thus, the Court understands the proximity sensor to sense the relative closeness of other interactive blocks.

Although the Court agrees with Defendant that the claims describe a proximity sensor detecting relative closeness, it does not agree that the proximity sensor also detects identity. The patent language associating the proximity sensor with identity detection is found in the specification's discussion of a specific embodiment. *See id.* col. 2, ll. 26–30 ("Each device is preferably further adapted to identify an adjacent device and to communicate information of both the identity and position of an adjacent advice . . . ."); col. 5, ll. 15–18 ("The proximity sensor, or other ID sensor means independent of it, is adapted to sense the identity of each adjacent block."). The Court may not use a specific embodiment described in a patent specification to

6

narrow a patent's claims. *Liebel-Flarsheim Co.*, 358 F.3d at 907 (Fed. Cir. 2004); *CCS Fitness, Inc.*, 288 F.3d at 1366 (Fed. Cir. 2002).

The Court also rejects Plaintiff's proposed construction. Plaintiff claims that "proximity sensor" is properly construed as "circuitry that senses whether another device is located within a vicinity of the circuitry." The Court rejects this proposed construction because the information detected by the proximity sensor is not the binary determination of whether one device is in the vicinity of another; it is the nonbinary determination of where one device is in relation to the other. The claim language that the proximity sensor "locat[es] the first and second blocks proximate to each other" and "locat[es] the third block proximate to the first and second blocks," *id.* col. 9, 9–10; *id.* col. 10, ll. 19–20, suggests that the proximity sensor detects the relative location of other devices, not merely whether they happen to be near the proximity sensor.

For these reasons, the Court adopts a modified version of Defendant's proposed construction of "proximity sensor" as meaning "structure for detecting the relative closeness of other devices."

### C. "Communications Unit"

The Court adopts Plaintiff's construction of "communications unit" except for the proposed language referring to the communications unit as "circuitry." Instead, the Court adopts Defendant's proposed language referring to the communications unit as "structure." Accordingly, the construction of "communications unit" adopted by the Court is "structure that transmits and receives information wirelessly."

The Court adopts a modification on Plaintiff's construction of "communications unit" because the Random House Webster's College Dictionary defines "communication" as "something imparted, interchanged, or transmitted." Random House Webster's College

Dictionary (2d ed. 2001). Plaintiff's proposed language "transmits and receives information wirelessly" accords with this plain meaning. However, the Court rejects Plaintiff's proposed language "circuitry" for two reasons. First, the specification explains that the communications unit is a wireless device. *See* '233 Patent, col. 2, l. 19; *id.*, col. 5, ll. 20–21. Second, as discussed in Section III.B, *supra*, "circuitry" is a narrow term without support in the patent language while "structure" is a broad term encompassing communications units composed of various materials.

The Court also rejects Defendant's proposed construction, "structure for the wireless, omni-directional transmission and reception of information relating to a respective device's identity and visual display material," for two reasons. First, the patent language does not support the concept of omnidirectional transmission, which the Court understands to be transmission of information in all directions. *See* Random House Webster's College Dictionary (defining "omnidirectional" as "sending or receiving signals in all directions") (2d ed. 2001). Defendant cites to the specification language referring to a wireless communications unit, (Doc. 36 at 8), but a communications unit being wireless does not mean that information travels in all directions. Defendant also cites to Figure 3 of the '233 Patent (*Id.* at 9); however, Figure 3 only establishes that the interactive blocks communicate with each other when "attached horizontally or vertically." *See* '233 Patent, fig. 3. Figure 3 does not establish that the interactive blocks communicate when attached at a diagonal. Defendant lastly cites to specification language referring to the use of telecommunication protocols (Doc. 36 at 9); however, the use of telecommuncation protocols is found in the specification's discussion of a single embodiment, and the Court may not use a specific embodiment described in a patent specification to narrow a patent's claims. *Liebel-Flarsheim Co.*, 358 F.3d at 907 (Fed. Cir. 2004); *CCS Fitness, Inc.*, 288 F.3d at 1366 (Fed. Cir. 2002). Second, the language in the patent associating the communications

unit with transmission of "identity and visual display material" is also found in the specification's discussion of a single embodiment. *See* '233 Patent, col. 5, ll. 20–25. Thus, that language cannot guide the Court's interpretation of the term "communications unit."

For these reasons, the Court adopts a modified version of Defendant's proposed construction of "communications unit" as meaning "structure that transmits and receives information wirelessly."

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the parties' disputed terms are construed as follows:

1. The term "changeable individual characterization" means "a representation associated with a particular device that is capable of being changed or altered during play";

2. The term "proximity sensor" means "structure for detecting the relative closeness of other devices";

3. The term "communications unit" means "structure that transmits and receives information wirelessly."

ENTERED this 7th day of October, 2013.

Alexandria, Virginia
10/7 /13

                                              /s/
                                      Gerald Bruce Lee
                                      United States District Judge