IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MITILE, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:13-cv-451 (GBL/TCB) |
| v. | ) | |
| | ) | |
| HASBRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Hasbro, Inc.'s Motion for Summary Judgment (Doc. 37). This case concerns Plaintiff MiTile Ltd.'s allegation that Scrabble Flash, Boggle Flash, Yahtzee Flash, and Simon Flash (collectively "the Flash Products") infringe U.S. Patent No. 8,057,233 ("the '233 Patent"). The Flash Products are game systems manufactured by Defendant, each consisting of four or five electronic tiles that users can arrange to create different, winning patterns.

There are three issues before the Court. The first issue is whether the Court should grant Defendant's motion for summary judgment on Plaintiff's claim that the Flash Products literally infringe the '233 Patent. The second issue is whether the Court should grant Defendant's motion for summary judgment on Plaintiff's claim that the Flash Products infringe the '233 Patent under the doctrine of equivalents. The third issue is whether the Court should grant Defendant's motion for summary judgment on Defendant's counterclaim that the '233 Patent is invalid because it is anticipated by prior art.

The Court GRANTS IN PART, DENIES IN PART, and DISMISSES AS MOOT IN PART Defendant's motion for summary judgment. Specifically, the Court GRANTS summary

judgment on Plaintiff's claim of literal infringement because the Flash Products combine two elements of the '233 Patent—the communications unit and the proximity sensor—into a single element within the Flash Products—the infrared transceiver. The Court also GRANTS summary judgment on Plaintiff's claim of equivalent infringement because the IR transceiver of the Flash Products is substantially different from the proximity sensor recited in the '233 Patent. The Court DENIES summary judgment on Defendant's counterclaim of invalidity because Plaintiff has established a genuine dispute of material fact as to whether the prior art cited by Defendant discloses all of the elements of the '233 Patent. Lastly, the Court DISMISSES AS MOOT Defendant's affirmative defenses of invalidity and lack of willfulness because the Court has determined that the Flash Products do not infringe the '233 Patent as a matter of law.

## I. BACKGROUND

Plaintiff MiTile, Ltd. ("MiTile"), a British corporation based in North Wales, brings this action against Defendant Hasbro, Inc. ("Hasbro"), a U.S. toy and game manufacturer based in Rhode Island. Plaintiff alleges one count of willful infringement (Count I) against Defendant. Defendant denies Plaintiff's allegation of willful infringement and raises seven defenses: (i) Failure to State a Claim, (ii) Non-Infringement, (iii) Invalidity, (iv) Waiver, Estoppel, Laches, and/or Acquiescence, (v) Marking, (vi) No Basis for Injunctive Relief, and (vii) Additional Defenses. Defendant also asserts two counterclaims against Plaintiff seeking a declaratory judgment of non-infringement (Count I) and a declaratory judgment of invalidity (Count II). Defendant now requests summary judgment on Plaintiff's claim of infringement, Defendant's affirmative defenses of invalidity and lack of willfulness, and Defendant's counterclaims of declaratory judgment of non-infringement and invalidity.

The claim, affirmative defenses, and counterclaims in this case arise from Defendant's creation, manufacture, and sale of Scrabble Flash, Boggle Flash, Yahtzee Flash, and Simon Flash (collectively "the Flash Products"). The Flash Products are game systems, each consisting of four or five electronic tiles, which display a variety of letters, images, and numbers, and which players can arrange in different, winning patterns. (Doc. 1, ¶¶ 37–43.) Plaintiff alleges that the Flash Products infringe U.S. Patent No. 8,057,233 ("the '233 Patent"), literally and under the doctrine of equivalents. The '233 Patent recites a game system consisting of "manually manipulable device[s]" that "interact with a similar device or devices according to their relative locations so as to produce a sensory response for a user[.]" (Doc. 1-1, U.S. Patent No. 8,057,233 col. 1, ll. 6–9 (filed Nov. 15, 2011)). Plaintiff owns all right, title, and interest in the '233 Patent. (Doc. 1, ¶ 3.)

Thomas Martin Owen ("Owen"), then–Director of Development at Futurelab, began developing the "Intelligent Apparatus" system in 2004. (*Id.* ¶¶ 21–22.) The Intelligent Apparatus system eventually became the prototype for the game system taught in the '233 Patent. On June 2, 2005, Owen filed Patent Application No. 11/142,955 ("the '955 Application") to cover the game system and on November 15, 2011, the '955 Application matured into the '233 Patent entitled "Manipulable Interactive Devices." (*Id.* ¶¶ 14–15.) Owen assigned the '233 Patent to the game development company Smalti on September 4, 2007 and on March 22, 2013, Smalti assigned the '233 Patent to Plaintiff. (*Id.* ¶¶ 19–20.)

On January 19, 2009, Yesim Kunter, a Concept Designer at Hasbro, learned of Owen's game system and asked Owen to explain the game system to Hasbro's Futurist Team, a division within Hasbro with the stated mission of "inspir[ing] and bring[ing] new innovative ideas for Hasbro." (*Id.* ¶¶ 24–25.) Owen later made a presentation to Phil Sage, Director of Global

3

Technology Acquisition at Hasbro, describing a "multi-sensory play and learning system." (Doc. 1-6, at 3.) Also, at various times between late 2009 and mid-2010, Owen was in communication with several Hasbro employees, including Kunter, Leigh Anne Cappello, and David Maurer, about the game system. (Doc. 1, ¶¶ 27–32.) In the fall of 2010, Hasbro released Scrabble Flash, consisting of five interactive blocks, each presenting a variety of letters, images, and numbers, (*Id.* ¶ 33), and in 2011, Hasbro released Yahtzee Flash and Simon Flash, also consisting of interactive blocks presenting a variety of letters, images, and numbers, (*Id.* ¶ 35).

There are six independent claims at issue, claims 1, 12, 18, and 20–22 of the '233 Patent, and seven dependent claims, claims 5–7, 14, 16, 17, and 19. Claim 1, which illustrates the terms at issue, provides for:

> 1. A learning game method making use, in play, of a set of at least two manually manipulable interactive blocks each having a changeable individual characterization, each interactive block having:
>
> a processor arranged to control operation of the block;
> a power source providing power to the block;
> a visual display unit arranged to display visual display material, the visual display material presenting said changeable individual characterization of its respective interactive block in a form selected from the group consisting of: a letter; a group of letters; and a word;
> a response generator;
> a communications unit configured, in use, to effect communication with at least a second of said at least two blocks of the set; and
> a proximity sensor configured to sense proximity and determine relative position of at least said second of said at least two interactive blocks . . . .

(Doc. 1-1, '233 Patent col. 8, ll. 49–66.)

Defendant filed its Motion for Summary Judgment on August 5, 2013 (Doc. 37), Plaintiff filed its Opposition on August 16, 2013 (Doc. 45), and Defendant filed its Reply on August 22, 2013 (Doc. 54). The Court heard oral argument on Defendant's motion on September 30, 2013.

Following oral argument, the parties filed a joint notice dismissing Defendant's counterclaim of invalidity (Doc. 67).

On October 7, 2013, this Court issued a Claim Construction Order, construing three terms in the '233 Patent. (Doc. 62.) The Court held that (1) the term "changeable individual characterization" means "a representation associated with a particular device that is capable of being changed or altered during play"; (2) the term "proximity sensor" means "structure for detecting the relative closeness of other devices"; and (3) the term "communications unit" means "structure that transmits and receives information wirelessly." (*Id.*)

Defendant's motion for summary judgment is now properly before the Court.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

5

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. ANALYSIS

#### A. Literal Infringement

This Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim of literal infringement (Count I) because the '233 Patent teaches a communications unit that is distinct from the proximity sensor, and Plaintiff does not contest that the communications unit and proximity sensor of the Flash Products share a common circuitry. (*See* Doc. 45, at 7; Doc. 45-1, Bederson Decl. ¶ 40.) Specifically, Plaintiff admits that "[t]he Flash Products have some circuit elements that are used to both sense the proximity of another device as well as receive information wirelessly." (Doc. 45-1, Bederson Decl. ¶ 40.) Thus, there is no genuine dispute of material fact as to whether circuitry is shared between any communications unit and proximity

6

sensor in the Flash Products; the only dispute is whether the sharing of circuitry precludes literal infringement as a matter of law. The Court finds that the shared circuitry does preclude literal infringement as a matter of law because the '233 Patent teaches a communications unit that is wholly separate from the proximity sensor.

To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Thus, "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Amgen, Inc v. F. Hoffman-LaRoche, Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009).

Here, Defendant argues that the Flash Products lack a communications unit structurally distinct from the proximity sensor, which Defendant argues is what the '233 Patent requires. Plaintiff argues that the '233 Patent does not require the communications unit to be structurally distinct from the proximity sensor and that the infrared ("IR") transceiver in the Flash Products contains both the communications unit and the proximity sensor disclosed by the '233 Patent. Plaintiff argues that the IR receiver and IR transmitter circuitry together serve as the communications unit in the Flash Products, while the IR receiver circuitry alone serves as the proximity sensor in the Flash Products.

The Court finds that the '233 Patent teaches a communications unit that is wholly separate from the proximity sensor and thus, the Flash Products with their dual-function IR transceiver cannot literally infringe the '233 Patent. The claims of the '233 Patent list "communications unit" separately from "proximity sensor." (*See* Doc. 1-1, '233 Patent col. 8, ll. 61–66.) The claims do not suggest that the communications unit overlaps structurally with the proximity sensor. Rather, the clear implication of the claim language is that, in the patented

invention, the communications unit is a component distinct from the proximity sensor. "Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). Thus, "[i]n the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings." *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

The specification confirms that the communications unit in the '233 Patent is a component distinct from the proximity sensor. The specification refers to the communications unit as "a wireless device" and the proximity sensor as "a magnetic or electrical device[.]" (*See* Doc. 1-1, '233 Patent col. 2, ll. 19, 31.) Nothing in the specification suggests that portions of the communications unit function as the proximity sensor, and nothing in the specification refers to the communications unit as being able to detect the relative closeness of other devices. To the contrary, the specification treats the proximity sensor and communications unit as separate components of the patented invention. *See Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention.").

Plaintiff relies on *Linear Technology Corp. v. ITC*, 566 F.3d 1049 (Fed. Cir. 2009), and *Powell v. Home Depot*, 663 F.3d 1221 (Fed. Cir. 2011), for the proposition that claim elements can share a common circuitry. The Court does not disagree with this proposition as a general matter. However, the Federal Circuit in *Linear Technology* found that the "second circuit" and "third circuit" elements of a patented electric voltage regulator could share a common circuitry

*as a matter of claim construction*. The court reasoned that "nothing in the claim language or specification . . . support[ed] narrowly construing the terms to require . . . entirely distinct 'second' and 'third' circuits." *Linear Technology*, 566 F.3d at 1055. Likewise, the Federal Circuit in *Home Depot* found that the "cutting box" could structurally overlap with the "dual collection structure" because the specification indicated that the cutting box could function as a dust collection structure. *See Home Depot*, 663 F.3d at 1231–32. *Linear Technology* and *Home Depot* suggest that claim elements can overlap structurally but only if intrinsic evidence, like the claims and specification, support reading structural overlap into the patent. Absent such evidence, the presumption is that elements separately listed connote elements separately structured. As the Federal Circuit noted in *Tandon Corp. v. U.S. International Trade Commission*, 831 F.2d 1017 (Fed. Cir. 1987),

> There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.

*Id.* at 1023.

Plaintiff suggests that the prosecution history of the '233 Patent supports reading structural overlap into the '233 Patent. (*See* Doc. 45, at 9.) First, it is unclear that the Examiner rejected the '233 Patent, as Plaintiff contends, because a prior-art reference disclosed a structurally overlapping communications unit and proximity sensor. In the grounds of rejection, the Examiner stated, "Mulder discloses . . . a communications unit and a proximity sensor adapted to sense the close proximity of a similar device (both interpreted to be the electric contacts)." (Doc. 44-2, at 3.) It is unclear from that statement whether the Examiner interpreted the communications unit and the proximity sensor in Mulder to be the *same* "electric contacts" or

merely to *both* be types of "electric contacts." Second, even if the Court accepts Plaintiff's reading of the statement as true, the Court cannot infer from Owen's silence that Owen agreed with the contents of the statement. The Court may only "refer to the prosecution history . . . to discern the applicant's *express* acquiescence with or distinction of the prior art as further indication of the scope of the claims." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) (emphasis added) (citation omitted). That Owen distinguished the '233 Patent from Mulder on other grounds, without reference to the communications unit and proximity sensor, is not evidence of Owen's intent that the '233 Patent, like the Mulder reference, disclose a structurally overlapping communications unit and proximity sensor.

Because there is no intrinsic evidence to rebut the presumption that the communications unit and proximity sensor are separate structures, the presumption recognized by the Federal Circuit in *Tandon Corp.* must control. Moreover, because the language of the '233 Patent suggests that the communications unit and proximity sensor are structurally separate, the Court finds *Linear Technology* and *Home Depot* inapposite. Thus, the Court holds that Plaintiff's claim of literal infringement fails as a matter of law and grants Defendant summary judgment on Count I of Plaintiff's Complaint.

### B. Equivalent Infringement

The Court GRANTS Defendant's motion for summary judgment on Plaintiff's claim of equivalent infringement (Count I) because no reasonable juror could find that the function performed by the IR transceiver of the Flash Products is substantially equivalent to the function performed by the proximity sensor of the patented invention.

### i. *Waiver of Equivalent Infringement Claim*

As a threshold matter, the Court must resolve the question of whether Plaintiff waived its right to assert an equivalent infringement claim when it failed to disclose the basis for that claim in Plaintiff's Preliminary Infringement Contentions. Defendant argues that Plaintiff's preservation of the equivalent infringement claim in its Preliminary Infringement Contentions did not suffice to avoid waiver. In response, Plaintiff argues that it could not have provided a complete equivalent-infringement analysis because Defendant had not yet filed its non-infringement and claim construction contentions.[1]

The Scheduling Order issued by the Court on June 19, 2013, directs Plaintiff to serve preliminary infringement contentions that include "an identification of whether . . . doctrine of equivalents is alleged." (Doc. 26, at 7.) Plaintiff satisfied the Scheduling Order by identifying that it would preserve its claim of equivalent infringement. The Scheduling Order did not require Plaintiff to disclose the full evidentiary basis for its equivalent-infringement claim and, indeed, the Scheduling Order contemplates the possibility that Plaintiff's infringement contentions would evolve over time. Specifically, the Scheduling Order states that "[a]mendment or modification of the final infringement, non-infringement, validity or invalidity contentions may be made only by order of the court, which shall be entered upon a showing of good cause." (*Id.* at 8.)

For these reasons, the Court finds that Plaintiff did not waive its equivalent infringement claim.

    ii.    *Motion for Summary Judgment on Equivalent Infringement Claim*

---

[1] Defendant relies on an unpublished opinion from the District of Maryland in support of its waiver theory. (*See* Doc. 38, at 6 n.1.) However, in *Icon Outdoors, LLC v. Core Research, Inc.*, No. 11-2967, 2013 WL 2476392 (D. Md. June 7, 2013), the court found that the plaintiff had not complied with a local rule because the plaintiff waited one year after serving disclosures to clarify that it never intended to waive the doctrine of equivalents. *Id.* at *10. Here, Plaintiff made clear its intent to preserve an equivalent infringement claim.

11

The Court enters summary judgment in favor of Defendant on Plaintiff's equivalent infringement claim because no reasonable juror could find that the function performed by the IR transceiver of the Flash Products is substantially equivalent to the function performed by the proximity sensor of the patented invention.

The parties agree that, in the Flash Products, the IR transceiver transmits an electrical signal when it receives an electrical signal from another block exceeding a minimum threshold. The minimum threshold is exceeded when another block is closely aligned with the transceiver. (*See* Doc. 45-1, Bederson Decl. ¶ 44; Doc. 38-7, Polanek Decl. ¶¶ 6–8.) Additionally, the Court construes the proximity sensor of the '233 Patent as a "structure for detecting the relative closeness of other devices." (*See* Doc. 62, at 6.) Thus, the only dispute between the parties is whether the function performed by the Flash Products' transmission of an electrical signal is substantially equivalent to the proximity sensor's detection of relative closeness.[2]

A product differing enough from a patented invention to preclude literal infringement can still infringe under the doctrine of equivalents if "there is equivalence between those elements of the accused products and the claimed limitations of the patented invention that are not literally infringed." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999). An element is equivalent if the difference between the element and the claimed limitation is insubstantial. *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001). This is known as the "insubstantial differences test." See *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520

---

[2] In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff also argued that any omnidirectional communication or identity-sensing in the patented invention were insubstantial differences from the Flash Products. (*See* Doc. 45, at 11–12.) Because the Court has construed the communications unit of the '233 Patent not to disclose omnidirectional communication, the Court does not address Plaintiff's argument on omnidirectional communication. Likewise, because the Court has construed the proximity sensor of the '233 Patent not to detect identity, the Court does not address Plaintiff's argument on identity-sensing.

U.S. 17, 39–40 (1997). Another test "used to determine whether differences are insubstantial is to determine whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Schoell*, 247 F.3d at 1209–10. This is known as the "triple identity" test. *See Warner-Jenkinson Co.*, 520 U.S. at 39–40. A claim of equivalent infringement may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent. *Zelinski*, 165 F.3d at 1316.

Here, Plaintiff bears the burden of proving that the IR transceiver of the Flash Products is substantially equivalent to the proximity sensor of the '233 Patent. Yet Plaintiff offers no evidence from which a juror could reasonably infer equivalence. The record shows that the IR transceiver of the Flash Products performs the binary function of determining whether another device is within a certain distance of the transceiver; the transceiver transmits an electrical signal when another device is within a certain distance, and it does not transmit the signal when another device is not within a certain distance. (*See* Doc. 45-1, Bederson Decl. ¶¶ 44, 51.) The record further shows that the proximity sensor performs the nonbinary function of detecting the relative closeness of other devices; the proximity sensor detects what the position of another device is relative to the sensor. (*See* Doc. 1-1, '233 Patent, col. 8, ll. 64–66.)

For example, Claim 1, representative of the other claims at issue, discloses a proximity sensor "configured to sense proximity and determine relative position of at least second of said at least two interactive blocks." (*Id.*) Thus, a proximity sensor serves the function of determining the position of another block relative to its own block; an IR transceiver, however, serves the function of transmitting a signal when another device is within a certain distance. Put differently, the proximity sensor can determine the position of another device, while the IR transceiver can

determine whether another device is within a predefined distance but not what the other device's position is within that predefined distance.

In support of its equivalence claim, Plaintiff presents the declaration of Ben Bederson.[3] To establish equivalence under the insubstantial-differences test, Bederson states that "the proximity sensor only needs to detect that another device is nearby" and explains the mechanics of the IR transceiver before concluding that the proximity sensor is equivalent to the diodes. (Doc. 45-1, Bederson Decl. ¶ 51.) Bederson's conclusion of insubstantial difference rests on an incorrect interpretation of the "proximity sensor" element. As construed by the Court, proximity sensor means "structure for detecting the relative closeness of other devices." (Doc. 62, at 6.) Bederson interprets the proximity sensor as only detecting whether another device is nearby, an interpretation specifically rejected by the Court. (*See id.* at 7 (rejecting Plaintiff's proposed definition of proximity sensor as "circuitry that senses whether another device is located within a vicinity of the circuitry").) Because Bederson's statements rest on an incorrect claim interpretation, they do not create a genuine dispute of material fact as to equivalence under the insubstantial-differences test.

In support of equivalence under the triple-identity test, Bederson contends that the IR transceiver and the proximity sensor perform the same function, "to send and receive data." (*See* Doc. 45-1, Bederson Decl. ¶ 57.) Bederson too broadly construes the function performed by the

---

[3] The Court notes that Defendant filed four affidavits with the Court as part of its motion for summary judgment: the declarations of Joshua C. Krumholz (Doc. 38), Daniel Polanek (Doc. 38), Andrew R. Oja (Doc. 54), and Richard Leung (Doc. 54). Only the Polanek and Leung Declarations discussed the mechanics of the Flash Products, and none discussed the differences between the Flash Products and the '233 Patent or the substantiality of any differences.

Expert evidence, however, is not always necessary to support a motion for summary judgment where the technology is "easily understandable without the need for expert explanatory testimony." *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) (quoting *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)).

14

IR transceiver and the proximity sensor. The nonbinary function of the proximity sensor enables the patented invention to perform different actions based on relative closeness. The Flash Products with their binary function cannot perform different actions based on relative closeness. Thus, the functions of the IR transceiver and the proximity sensor are not substantially the same, creating no genuine dispute of material fact as to equivalence. For these reasons, the Court holds that Plaintiff's claim of equivalent infringement fails as a matter of law and grants Defendant summary judgment on Count I of Plaintiff's Complaint.

### C. Affirmative Defenses of Invalidity and Lack of Willfulness

The Court DISMISSES AS MOOT Defendant's motion for summary judgment on its affirmative defenses of invalidity and lack of willfulness. Having found no literal or equivalent infringement, the Court need not answer the question of whether Defendant has valid defenses to Plaintiff's infringement claim. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 93 (1993) (where a court dismisses a claim of infringement, the affirmative defense of invalidity is moot).

### D. Counterclaim of Non-Infringement

The Court GRANTS Defendant summary judgment on its counterclaim for a declaratory judgment of non-infringement (Count I) for the reasons stated by the Court in granting Defendant summary judgment on Plaintiff's claim of infringement. *See supra* Sections III.A, III.B.

### E. Counterclaim of Invalidity

Because a finding of non-infringement does not moot a counterclaim of invalidity, *see Cardinal Chem.*, 508 U.S. at 98–99, the Court reviews Defendant's motion for summary

judgment on its counterclaim of invalidity (Count II).[4] Having made its review, the Court DENIES Defendant's motion for summary judgment because there is a genuine dispute of material fact as to whether the Kenji Patent[5] discloses the "changeable individual characterization" of the patented invention, (*see* Doc. 1-1, '233 Patent col. 8, l. 51), and whether the Zalewski Patent[6] discloses "having the processor of at least one block selectively effect a change to its presented individual characterization," (*see id.* at col. 12, ll. 59–61).

Patents enjoy a presumption of validity. 35 U.S.C. § 282. The burden is on the party challenging the patent to show that the patent is invalid by clear and convincing evidence. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). When evaluating a motion for summary judgment, the court views the record through the prism of the evidentiary standard of proof that would pertain at a trial on the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–53 (1986).

Defendant moves for summary judgment on the grounds that the Zalewski and Kenji Patents anticipate the '233 Patent. A patent is invalid as anticipated if

> (1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or
>
> (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

---

[4] On October 7, 2013, the Court issued an Order denying Defendant's motion for summary judgment on its counterclaim of invalidity for reasons to be stated in a forthcoming Memorandum Opinion and Order (Doc. 63). Before the Memorandum Opinion and Order issued, the parties jointly dismissed Defendant's counterclaim of invalidity (Doc. 67).

[5] The Kenji Patent is an unexamined Japanese patent application, Japanese Unexamined Patent Application Publication No. 2003-190662, and is dated August 2003. (*See* Doc. 38-5.)

[6] The Zalewski Patent is U.S. Patent No. 5,991,693 and is dated November 23, 1999. (*See* Doc. 38-4.)

35 U.S.C. § 102(a). The inquiry into anticipation proceeds on an element-by-element basis, and anticipation occurs where "the claimed invention was previously known" and "all of the elements and limitations of the claim are described in a single prior art reference." *Hakim v. Cannon Avent Grp., PLC*, 479 F.3d 1313, 1319 (Fed. Cir. 2007) (citation omitted).

Defendant argues that the Kenji Patent and the Zalewski Patent each disclose all of the elements of the '233 Patent and thus render the '233 Patent invalid as anticipated. The Court addresses each prior-art reference in turn.

i. *Anticipation by Kenji Patent*

The Court finds that a genuine dispute of material fact exists as to whether the Kenji Patent discloses the "changeable individual characterization" of the patented invention.[7] Plaintiff presents the Bederson Declaration to establish that the plurality of blocks disclosed in the Kenji Patent display fixed characterizations, not changeable characterizations as disclosed in the '233 Patent. According to Bederson, the Kenji blocks "do not each contain their own power source" and "have visible characters even when not connected to electrical power." (Doc. 45-1, Bederson Decl. ¶ 17.) Bederson concludes on this basis that the Kenji blocks have fixed, not changeable, characterizations.

This testimony, made by a knowledgeable affiant and stating the facts upon which Bederson draws his conclusion, is properly considered on summary judgment. *Cf. Phillips*

---

[7] Plaintiff argues that the Kenji Patent fails to disclose three other elements in the '233 Patent: (i) "a visual display unit arranged to display visual display material," (ii) "having the processor or at least one block selectively effect a change to its presented individual characterization," and (iii) "the change producing display of a new changeable individual characterization associated with the learning game." (Doc. 54, at 13–14.) Because disclosure of these elements turns on the same issue as the "changeable individual characterization" element—whether the characterization on the blocks is fixed—the Court in the interest of brevity discusses only the "changeable individual characterization" element.

*Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1988) (rejecting expert declarations as "wholly conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts, were reached"). Bederson's testimony is also supported by the language of the Kenji Patent. The Kenji Patent includes no elements referring to changes in the displayed characterization. For example, Claim 1 refers to "plural data block members, enabling the display of characteristic visual information on each display surface" but not to any changes in the information displayed. (*See* Doc. 38-5, at 2.) The claims contain no suggestion of any change in the characterizations. Indeed, the patentee establishes that he invented Kenji blocks as an improvement on wooden stackable block toys displaying Japanese hiragana letter information. (*See id.*) In that vein, the patentee distinguishes Kenji blocks from wooden blocks, not on the basis of changing characterizations but on the communicative ability of Kenji blocks:

> Because the present invention was conceived of in consideration of said problem points, it has as its object the provision of block toys which are suited on the educational side to a learning effect derived by the combination of educational and visual information by the conversion of visual information to auditory information likely to provoke interest and not become tiresome.

(*See id.* at 3.)

In response, Defendant argues that (i) the Kenji Patent contains no element of fixed characterization and (ii) the '233 Patent contains no requirement that the "visual display material be presented on some sort of dynamic display." (*See* Doc. 54, at 14.) First, that the Kenji Patent contains no specific reference to fixed characterization does not establish by clear and convincing evidence that the characterizations in the Kenji Patent are indeed changeable. Second, regardless of whether the '233 Patent discloses a dynamic display, the '233 Patent does disclose a changeable individual characterization. For these reasons, Defendant fails to bear its

heavy burden of establishing by clear and convincing evidence that the Kenji Patent discloses all of the elements of the '233 Patent.

### ii. Anticipation by Zalewski Patent

The Court finds that a genuine dispute of material fact exists as to whether the Zalewski Patent discloses "having the processor of at least one block selectively effect a change to its presented individual characterization." The Bederson Declaration asserts that the Zalewski Patent teaches a game system involving changes in the characterizations displayed on a plurality of blocks and that these changes are generated not by the blocks but by a computer external to the blocks. According to Bederson,

> the remote bodies of Zalewski are little more than electronic flash cards that connect to a host adapter unit, which in turn provides feedback on a distinct computer screen according to defined rules that attempt to match the rule to the arrangement of the electronic flashcards.

(Doc. 45-1, Bederson Decl. ¶ 31.)

In response, Defendant argues that no limitation in the '233 Patent states that instructions to make the selective change can only come from the blocks and not from a computer. (Doc. 54, at 12–13.) Defendant, however, fails to closely read the '233 Patent. The '233 Patent does require "the processor of at least one block [to] selectively effect a change." (Doc. 1-1, '233 Patent col. 12, ll. 59–60.) The plain meaning of this language is that it is the processor of the block, not the processor of a computer external to the block, which orders and implements the selective change. In fact, there is no suggestion in the '233 Patent that an external computer is an element of the game system. Ultimately, Defendant's argument that the '233 Patent encompasses a plurality of interactive blocks connected to an external computer is without factual support. Accordingly, Defendant fails to bear its heavy burden of establishing by clear and convincing evidence that the Zalewski Patent discloses all of the elements of the '233 Patent.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Court **GRANTS IN PART, DENIES IN PART, and DISMISSES AS MOOT IN PART** Defendant Hasbro, Inc.'s Motion for Summary Judgment (Doc. 37).

Specifically, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of patent infringement, literally and under the doctrine of equivalents; the Court DENIES summary judgment with respect to Defendant's counterclaim of invalidity; and the Court DISMISSES AS MOOT Defendant's affirmative defenses of invalidity and lack of willfulness.

Because the parties jointly dismissed the only remaining claim, Defendant's counterclaim of invalidity, this Order CLOSES the case.

The Clerk is directed to enter a separate Rule 58 judgment consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

ENTERED this 30th day of October, 2013.

Alexandria, Virginia
10/30/13

/s/
Gerald Bruce Lee
United States District Judge